# UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ  07101-0419
(973) 645-6340

WILLIAM J. MARTINI
    JUDGE

## LETTER OPINION

June 4, 2010

Damiano M. Fracasso
500 International Drive
Suite 155
Budd Lake, New Jersey 07828-1385
(*Attorney for Plaintiff*)

Richard P. Cushing
Steven D. Farsiou
Gebhardt & Kiefer, PC
1318 Route 31
P.O. Box 4001
Clinton, New Jersey 08809-4001
(*Attorneys for Defendants Tosti, Casey, Tomasula, and Town of Newton*)

Daniel L. Cevallos
Cevallos & Wong LLP
1417 Locust Street
Third Floor
Philadelphia, Pennsylvania 19102
(*Attorney for Defendant Hard*)

Susan Grande
(*Defendant Pro Se*)

Carlton H. Lowe, III
(*Defendant Pro Se*)

    RE:    Eaton v. Tosti, et al.
              **Civ. No. 09-5248 (WJM)**

Dear Counsel:

    Plaintiff Charles Eaton brings the instant action against a wide range of defendants, asserting a panoply of claims.  In short, this is the story of an antique sale gone wrong.  As a result, Plaintiff Eaton now brings suit against the seller of the antiques, the seller's family, three police officers, the Town of Newton, various John Doe entities, and "104 chattels."  Several Defendants have filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). There was no oral argument. Fed. R. Civ. P. 78. For the reasons stated below, the motions to dismiss filed by the so-called "Family Defendants" and the "Newton Defendants" are **GRANTED** in their entirety.

**I.    BACKGROUND**

While the factual allegations of the Complaint are notable due to their prolixity, a summary of the most relevant claims follows.[1]  Plaintiff Charles Eaton owns an estate sale and antique business in Newton, New Jersey.  Eaton brings the instant action against ten individuals. For ease of reference, the Court divides the ten defendants into two groups: the "Newton Defendants" and the "Family Defendants."  The Newton Defendants are: the Town of Newton, Newton Police Chief John Tomasula, and Newton Police Detectives Thomas Tosti and Neil Casey.  The "Family Defendants" are: Eren Brewer, the individual who sold Eaton the antiques; Kristen Schoener, Brewer's girlfriend; and, Susan Grande, Carlton Lowe, Carol Hard, and Diane Johnston, Brewer's family members.

After contacting Defendant Eren Brewer on the internet, Plaintiff bought several items from him, including a number of antique banks.  In exchange for the goods purchased, Brewer accepted $2,250 plus a chair valued at $100. (Compl. ¶ 36.)  During their conversations leading up to the sale, Defendant Brewer purportedly told Eaton that he inherited the items from his grandmother. (*Id.* ¶ 13.)

After Plaintiff Eaton bought the items from Brewer, Eaton was contacted by Brewer's family.  These family members informed Eaton that the items he purchased were stolen from the home of Defendants Grande and Lowe. (*Id.* ¶ 51.)  Brewer's mother, Defendant Carol Hard, allegedly told Eaton that Brewer was a drug addict and may have sold the stolen items for drug money. (*Id.* ¶ 57.)  The family asked for the items back and offered to make Eaton whole. (*Id.* ¶ 85.)  After this, Plaintiff Eaton did some research into Brewer and his family members.  Learning that Brewer was a nurse and that Defendants Grande and Lowe – Brewer's aunt and her companion – had a home health care business, Plaintiff Eaton concluded that Grande and Lowe were fabricating their right to the antiques. (*Id.* ¶¶ 66-72.)  Eaton states in his complaint that he suspected that Defendants Hard, Grande, and Lowe had stolen the antiques from their nursing home clients and had sent Brewer "out to the marketplace to fence the chattels." (Compl. ¶ 71.)  When Brewer did not get enough money for the items, Eaton surmised that his family invented the story about Brewer's drug addiction and the theft to bamboozle Eaton into rescinding the sale. (*Id.* ¶¶ 70-72.)

---

[1] The Court notes that the virtual blow-by-blow account of what transpired between Plaintiff and Defendants in the first part of the Complaint stands in stark contrast to the bare-bones, conclusory allegations contained in the twenty-three causes of action asserted at the end.  As will be discussed, *infra*, this type of pleading fails to provide "a short plain statement of the claim showing that the pleader is entitled to relief," as required by Rule 8(a)(2).

Plaintiff Eaton then contacted the police, and Defendants Tosti and Casey – members of the Newton Police Department – came to Eaton's antique store to view the items.  Eaton purportedly advised Tosti and Casey of his "concerns" regarding Brewer's family and the stolen antiques. (*Id.* ¶ 73.)  Tosti and Casey then told him to hold on to the items until there was a reported crime.  (*Id.* ¶ 76.)

In the interim, the family filed a loss report with the Medford, New Jersey police but held off on pressing charges against Brewer because they viewed him as a troubled young man. (Compl. Ex. K; ¶ 57.) After this report was filed, the police stopped by to ask Eaton to return the items, which he refused. (Compl. ¶ 95.) Instead of returning the items, Plaintiff then purportedly entered into a custody agreement with the Burlington County Prosecutor's Office (BCPO). (Compl. ¶ 106.)  Plaintiff Eaton works in Newton, New Jersey – in Sussex County – but instead Eaton went to the BCPO, ostensibly because Defendant Brewer's family lives in Medford, New Jersey, located in Burlington County.  The complaint states that this BCPO custody agreement allowed Eaton to keep the items on the condition he would turn them over to the BPO or the Medford Police for use in a criminal prosecution on demand. (Compl. ¶ 110.)  This "custody agreement" was quickly repudiated by the Medford Police Department.  (Compl. ¶ 126.)

After this "custody agreement" with the BCPO was finalized, Defendant Tosti again stopped by Eaton's store and allegedly demanded that the antiques be turned over to him.  (Compl. ¶ 114.) Eaton again refused.  Defendants Tosti and Casey then purportedly applied for a search warrant. (Compl. ¶ 134.) Superior Court Judge Edward Gannon signed the warrant, which was used by the Newton Police Department to search Eaton's store. (Compl. ¶ 153.)  While the warrant contained a list of the items to be seized, it listed the wrong address for Eaton's store. (Compl. Ex. K; ¶¶ 158-159.)

As a result of the foregoing, Plaintiff brings a twenty-three count complaint, asserting various Section 1983, 1985, and 1986 claims against the Newton Defendants.  Further, Plaintiff brings assorted common law claims against the Family Defendants.  All Defendants – except for Brewer, Johnston, and Schoener – have filed motions to dismiss, which are presently before the Court.

## II.   DISCUSSION

### A.   Motion to Dismiss Standard

In evaluating a motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents.  *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192,

3

1196 (3d Cir. 1993). All allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.,* 140 F.3d 478, 483 (3d Cir. 1998). This assumption of truth is inapplicable, however, to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). Furthermore, a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility..." *Iqbal*, 129 S.Ct. at 1949 (2009).

### B. "Official Capacity" Claims

As an initial matter, Plaintiff brings claims against Defendants Tomasula, Casey, and Tosti in their "official capacities" as members of the Newton Police Department. For purposes of Section 1983, "a lawsuit against public officers in their official capacities is functionally a suit against the public entity that employs them." *Cuvo v. De Biasi*, 169 Fed. Appx. 688, 693 (3d Cir. 2006) (citing *McMillian v. Monroe County*, 520 U.S. 781, 785 n.2 (1997)). Because Eaton is suing the Town of Newton, the suit against the officers in their official capacities is redundant. *Cuvo*, 169 Fed. Appx. at 693; *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Since the complaint only asserts claims against Tomasula in his official capacity, Plaintiff's Section 1983 claims against Tomasula may be dismissed on this basis alone. *See, e.g., Young v. New Sewickley Twp.*, 160 Fed. Appx. 263 (3d Cir. 2005) (citing *Kentucky v. Graham* and affirming district court's dismissal of official capacity suit under 12(b)(6)); *Lopez v. Maczko*, 2007 WL 2461709 at *7 (E.D.Pa. Aug. 16, 2007) (dismissing Section 1983 claim against police commissioner because city was already named as defendant in suit). Further, any claims against Tosti and Casey in their official capacities likewise are dismissed.

4

C. <u>Civil Rights Claims</u>

Plaintiff Eaton brings seven civil rights claims against the Town of Newton ("Newton"), Chief Tomasula, and Detectives Casey and Tosti. These claims are asserted under Sections 1983, 1985, and 1986. Each Defendant now moves to dismiss all counts asserted against him for failure to state a claim.

1. *Section 1983 – First Amendment Retaliation Claim (Count One)*

In Count One, Plaintiff asserts that Defendants Newton, Tomasula,[2] Casey, and Tosti abridged his right to "petition the Government for redress of grievances" under the First Amendment. To support this claim, Plaintiff cites to a series of allegations in his brief not pled in the body of the complaint, pertaining to "Casey and Tosti's illegal acquisition of a pair of antique Newton Police Department badges." (Pl.'s Br. 16.) Such allegations cannot be considered on a motion to dismiss, as they were not pled in the complaint. *See Pension Benefit Guar. Corp.*, 998 F.2d at 1196 ("In evaluating a motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents.")

Further, even if the allegations contained in the briefing and the exhibit to the complaint had been properly pled, Plaintiff still fails to state a First Amendment retaliation claim. To establish a First Amendment retaliation claim under 42 U.S.C. § 1983, a plaintiff must set forth the following elements: (1) he engaged in constitutionally protected conduct; (2) the defendant took adverse action sufficient to deter a person of ordinary firmness from exercising his rights; and (3) the adverse action was prompted by plaintiff's protected conduct. *Mann v. Brewer*, 2010 WL 1220963, at *2 (3d Cir. Mar. 30, 2010); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).

Even assuming, *arguendo*, that Plaintiff pled that he engaged in protected conduct, he fails to set forth that the adverse action alleged – i.e., the search of his store – was prompted by that protected conduct. The complaint pleads that Defendant Tosti informed Eaton that he planned to obtain a search warrant if Eaton did not surrender the stolen items by 2 p.m. on October 9, 2009. (Compl. ¶¶ 114-119.) Plaintiff then alleges that he copied Defendant Tomasula on an email, in which he informed Tomasula of Totsi's actions. Review of the email to Chief Tomasula, which is what Plaintiff appears to label as "protected conduct," reveals that it was not sent until 4:26 p.m. on October 9th. Thus, under the facts as pled by Plaintiff, the decision to obtain a search warrant for Plaintiff's store was made hours before his email to Tomasula. As such, the complaint on its face

---

[2] For the reasons set forth above, the claim against Tomasula is dismissed, as are all claims asserted against him in this action.

fails to set forth that the subsequent search of Plaintiff's store was prompted by Plaintiff's the email to Tomasula. Accordingly, this count fails to state a claim and must be dismissed.

       2.    *Section 1983 – Fifth Amendment Due Process Claim (Count Two)*

Plaintiff next alleges that the Town, the police chief, and the two police detectives have a "policy, custom and practice of depriving citizens of liberty and/or property without due process of law." (Compl. Count Two, ¶ 5). Further, he claims that these defendants failed to train and supervise their subordinates to prevent these unspecified due process violations.

As a threshold matter, a Section 1983 complaint need only satisfy the liberal notice pleading standard of Federal Rule of Civil Procedure 8(a). *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). Nonetheless, a district court is not required to credit a "bald assertion" when deciding a motion to dismiss under this liberal notice pleading standard, and the plaintiff cannot use allegations of civil rights violations that amount to nothing more than "conclusory, boilerplate language" to show that he may be entitled to relief under § 1983. *See id.* at 354-55. This, however, is precisely what Plaintiff does here in Count Two and throughout the complaint. *See, e.g.,* Compl. Count Two ¶ 8 ("Acting under color of law and pursuant to their policy, custom and practice of depriving citizens such as the Plaintiff or privacy and/or property without due process of law and failing to adequately train and supervise their subordinates, The Town of Newton, Tomasula, Casey, and John Does 3-99 jointly and severally deprived the Plaintiff of liberty and/or property without due process of law.") On this basis alone, Count Two may be dismissed, as may all counts of this complaint.

However, after attempting to discern what precisely Plaintiff is alleging, it appears to the Court that the claim fails. It is well-established that a municipality cannot be held liable for the constitutional violations of its employees "unless action pursuant to official municipal policy of some nature caused a constitutional tort" to be committed by such employees. *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691(1978). Indeed, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694.

Plaintiff attempts to plead such a so-called municipal liability claim by couching his allegations in terms of a "policy, custom and practice of depriving citizens of liberty and/or property without due process of law." This threadbare conclusory allegation

alone, however, is insufficient to survive the pending motion to dismiss. Plaintiff points to no particular policy; instead, he appears to speculate that a general policy to violate due process exists based on his personal interaction with the Newton police in this one instance. *See City of Okla. City v. Tuttle*, 471 U.S. 808, 821 (1985) (plurality) (stating that in the absence of a written policy that is itself unconstitutional, "more proof than the single incident [of excessive police force] will be necessary in every case to establish both the requisite fault on the part of the municipality and the causal connection between the 'policy' and the constitutional deprivation."); *Id.* at 832 (Brennan, J., concurring in the judgment) ("[A] single incident of police misbehavior ... is insufficient as sole support for an inference that a municipal policy or custom caused the incident.") (emphasis in original); *see also Gilmore v. Reilly*, Civ. No. 09-5856, 2010 WL 1462876, at *8 (D.N.J. Apr. 9, 2010) (same). Since no policy or custom is sufficiently pled, the claims against Newton, Tomasula, Tosti and Casey fail.

In addition, the claims against Tomasula and the Town must be dismissed because the complaint fails to assert that either was a policymaker responsible for the policy or, through acquiesence, for the custom. *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996). The complaint asserts no action by the Town, and only the receipt of an email by Tomasula. Both are plainly insufficient. In the case of Tomasula, it is not enough that he received a single communication; instead, Plaintiff must plead that he was a "moving force" behind the constitutional deprivations asserted. *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) ("Once a § 1983 plaintiff identifies a municipal policy or custom, he must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.") (quoting *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997)). As such, this Count also must be dismissed on this basis.

3.  *Section 1985 – Conspiracy to Interfere with Civil Rights (Count Four)[3] & Section 1986 – Neglect to Prevent Conspiracy to Interfere (Count Six)*

In Counts Four and Six, Plaintiff brings conspiracy and neglect to prevent a conspiracy to violate civil rights claims under 42 U.S.C. §§ 1985 and 1986 against Defendants Newton, Tomasula, Tosti, and Casey. Plaintiff's Section 1985 claim fails on its face because he does not allege "some racial, or perhaps otherwise class-based invidiously discriminatory animus behind the conspirators' action." *Farber v. City of Paterson*, 440 F.3d 131, 135 (3d Cir. 2006). Since Plaintiff fails to plead a Section 1985 claim, his Section 1986 count likewise fails. *See Rogin v. Bensalem Twp.*, 616 F.2d 680, 696 (3d Cir.1980) ("Because transgressions of § 1986 by definition depend on a preexisting violation of § 1985, if the claimant does not set forth a cause of action under

---

[3] The complaint does not have a Count Three. Plaintiff appears to have skipped it.

7

the latter, its claim under the former necessarily must fail also."). Both counts are dismissed.

    4.    *Section 1983 – Fourth Amendment Claim (Count Five)*

In Count Five, Plaintiff brings a Section 1983 claim premised on the allegedly unreasonable search of his store.  Eaton asserts that the search was unreasonable since the warrant procured by Defendants Tosti and Casey was defective.  Specifically, Plaintiff alleges that: (1) Tosti and Casey failed to inform that Judge who issued the warrant that Plaintiff had a certificate of ownership and sale for the items seized (Compl. ¶ 137); (2) Tosti and Casey failed to file an affidavit in support of their warrant application (Compl. ¶ 138); and (3) the warrant listed the wrong street address for Plaintiff's store (Compl. ¶¶ 158-159.)

A Section 1983 plaintiff who challenges the validity of a search warrant by asserting that law enforcement agents submitted false affirmations to the issuing judicial officer must satisfy the two-part test developed by the Supreme Court in *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). *See Lippay v. Christos*, 996 F.2d 1490, 1502, 1504 (3d Cir.1993). This is true whether the alleged falsehood is an affirmative misrepresentation or a material omission. *See, e.g., Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997); *United States v. Frost*, 999 F.2d 737, 743 n.2 (3d Cir.1993). Under *Franks* and its progeny, to set forth a Fourth Amendment claim in this context, the plaintiff must plead: (1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause. *See Franks*, 438 U.S. at 171-72.

Plaintiff pleads facts in the complaint, which the Court must accept as true for purpose of this motion.  Even accepting these facts as true, however, Plaintiff does not adequately set forth an 1983 claim. First, Eaton claims that Tosti and Casey's failure to provide a certificate of ownership and sale for the stolen goods to the judge issuing the warrant renders it defective.  However, as noted above, to plead a claim under *Franks*, Plaintiff must set forth that such an omission was material to the finding of probable cause.  Here, that was not the case.  The complaint states that Eaton informed the officers that he believed these items to be stolen. (Compl. ¶¶ 73, 74.)  Having reported to the police that he was in possession of stolen goods, Eaton himself set forth probable cause. That he had received a certificate of ownership in the conveyance of the stolen goods is of no material import.  Thus, he fails to state a claim on this basis.

Further, Plaintiff pleads that these detectives failed to provide an affidavit setting forth probable cause to the judge who issued the warrant.  As such, Plaintiff attempts to

8

plead a violation of the Warrant Clause of the Fourth Amendment, which provides that "no Warrants shall issue but upon probable cause, supported by Oath or affirmation." U.S. CONST. amend. IV.  Review of the search warrant, which is attached as Exhibit K to the complaint, reveals that it is based on Defendant Casey's sworn oath.  This oath is sufficient.  It is not necessary that a warrant application be supported by affidavit when it is supported by an officer's sworn oath to the issuing judge.  *See State v. Gioe*, 950 A.2d 930, 936-37 (N.J. Super. Ct. App. Div. 2008) (discussing the "oath or affirmation" requirement).  Therefore, again, Plaintiff's claim fails.

Finally, Plaintiff alleges that a typographical error on the face of the warrant renders it defective.  The warrant contained the wrong address for Plaintiff's store; it listed "135 Spring Street" as the location of "Eaton's Estate Services" instead of "133 Spring Street."  As such, Plaintiff appears to claim that the warrant fails the particularity requirement.  The Fourth Amendment requires that a search warrant include sufficient information to identify the places or objects to be searched. A warrant meets the particularity requirement "if the description is such that the officer with the search warrant can, with reasonable effort, ascertain and identify the place intended." *Steele v. United States*, 267 U.S. 498, 503 (1925). Technical errors in the warrant and affidavit, including erroneous addresses, will therefore not necessarily invalidate a warrant and subsequent search. *See United States v. Valentine*, 984 F.2d 906, 908 (8th Cir.1993) (error in address of apartment building to be searched did not invalidate search warrant); *United States v. Burke*, 784 F.2d 1090, 1092 (11th Cir.1986) (incorrect address and misspelling of street where apartment was located did not invalidate search warrant); *United States v. Slotcavage*, 1997 WL 431002, at *4-5 (E.D.Pa. Jul. 16, 1997) (same).  Here, the warrant states that it was for "Eaton's Estate Services."  This description was sufficiently particular for the officers to identify the place intended.

Thus, for the foregoing reasons, the Court holds that Count Five fails to state a claim for relief under Section 1983.

      5.     *Section 1983 – Violation of Fifth and Sixth Amendment Right to Counsel (Count Twenty-Two)*

Next, Plaintiff seeks damages under Section 1983, stemming from Detectives Tosti and Casey's attempts to speak with him after he "asserted his right to legal counsel." (Compl. Count 22, ¶ 7.)  This count also fails to state a claim.

First, Plaintiff has not set forth that he was subject to custodial interrogation under the Fifth Amendment.  Thus, his *Miranda* rights did not attached.  Even if he had been subject to custodial interrogation, however, this claim still fails.  "[Q]uestioning a plaintiff in custody without providing *Miranda* warnings is not a basis for a § 1983 claim

9

as long as the plaintiff's statements are not used against her at trial." *Renda v. King*, 347 F.3d 550, 557-58 (3d Cir. 2003). Here, there have been no charges filed against Plaintiff, let alone a trial; therefore, assuming *arguendo*, that Plaintiff had been subjected to custodial interrogation, he still fails to state a claim.

In addition, his Sixth Amendment right to counsel never attached. The Sixth Amendment right arises at the initiation of adversarial judicial proceedings against the defendant. *United States v. Gouveia*, 467 U.S. 180, 187-188, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984). No judicial proceedings are pled here. Judicial proceedings against an accused include the "formal charge, preliminary hearing, indictment, information, or arraignment." *Id.* at 188-89. It is not until such proceedings commence, however, that the Sixth Amendment may be invoked. Thus, there was no rights violation on which to base a Section 1983 claim.

      6.     *Section 1983 – Violation of NJ State Constitution's "Crime Victim's Bill of Rights" (Count Twenty-Three)*

The New Jersey State Constitution states, in relevant part, that

> [a] crime victim shall be treated with fairness, compassion and respect by the criminal justice system. ... A victim of a crime shall be entitled to those rights and remedies as may be provided by the Legislature....

N.J. CONST., art. I, ¶ 22. From this, Plaintiff seeks to be deemed a "victim of crime" and to receive money damages. This claim fails because a Section 1983 plaintiff must plead that he was denied a *federal* right. A violation of a state constitutional right is not actionable under § 1983. *Berg v. County of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000) ("To make out a prima facie case under § 1983, the plaintiff must demonstrate that a person, acting under color of law, deprived him of a *federal* right.") (emphasis added).

Further, Plaintiff cites to no statutory provision or case law, nor could the Court find any, establishing a right to damages under this state constitutional provision. As such, this Count fails to set forth either a Section 1983 claim or a state-law claim under the NJ Constitution.

    D.    <u>State Law Claims</u>

Defendants Grande, Lowe, and Hard move to dismiss those state law claims brought against them by Eaton. These claims are: conspiracy to commit tort (count ten); quiet title (count eleven); slander of title to personal property (count twelve); negligence causing economic loss (count sixteen); replevin (count seventeen); negligence (count eighteen); and, tortious interference with prospective economic interest (count twenty).

After review of the papers, each of these counts is dismissed as to Defendants Grande, Lowe, and Hard.

    1.    *Quiet Title to Personal Property (Count Eleven)*

Plaintiff seeks to quiet his title to the items purchased from Brewer. In the complaint, Plaintiff asserts no statutory basis for this claim, nor does he cite any case law discussing a common law claim for quieting title to personal property in his briefing. After review of the relevant law, it appears that a plaintiff may only bring an action to quiet title to *land* under N.J. law. *See* N.J.S.A. 2A: 62-1. Finding no basis for Plaintiff's claim,[4] it is dismissed.

    2.    *Slander of Title to Personal Property (Count Twelve)*

In Count Twelve, Plaintiff alleges that Grande, Lowe, and Hard slandered his "free and clear title to the chattels." Plaintiff does not specify the acts constituting this slander. Thus, the claim fails on this basis, since "defamation "must be pled with particularity and thus must set forth the facts identifying the defamatory statements, their utterer, and their publication." *Zoneraich v. Overlook Hosp.*, 514 A.2d 53, 63 (N.J. Super. Ct. App. Div. 1986).

    3.    *Negligence Causing Economic Loss (Count Sixteen)*

Eaton next alleges that Defendants' failure to report Brewer's theft to the police resulted: (1) in the failure of the police to arrest Brewer and (2) the subsequent sale by Brewer of the stolen items to Plaintiff. New Jersey recognizes a tort for negligent interference with prospective advantage. *See People Express Airlines Inc. v. Consol. Rail*

---

[4] Plaintiff provides no support for this claim in his opposition briefing to the motions to dismiss filed by Defendants Hard, Lowe, and Grande. Instead, Plaintiff cites to *Spruill v. Gillis*, 372 F.3d 218, 236 n.12 (3d Cir. 2004), for the proposition that he need not plead specific facts or bases for liability in his complaint; instead, he may simply plead facts "sufficient at least to 'suggest' a basis for liability." (Pl.'s Opp. Br. to Hard's Mot. to Dismiss 3). This not only mischaracterizes *Spruill* but flies in the face of the Supreme Court's holdings in *Twombly* and *Iqbal*. First, *Spruill* dealt with a pro se prisoner litigant and reaffirmed the well-established rule that "pro se complaints (especially from civil rights plaintiffs) should be read liberally ... [since] prisoners in particular are often at an informational disadvantage that may prevent them from pleading the full factual predicate for their claims." *Spruill*, 372 F.3d at 236 n.12. Plaintiff Eaton is neither a prisoner nor *pro se*. Further, under *Twombly* and *Iqbal*, a complaint need not contain detailed factual allegations but must contain sufficient averments to "raise a plaintiff's right to relief above a speculative level." *Twombly*, 550 U.S. at 570; *see, supra,* Point II.A. Thus, the Court cannot excuse the mere "suggestion" of claims and the invitation to divine a cause of action therefrom on a motion to dismiss, particularly where Plaintiff is represented by counsel.

*Corp.*, 100 N.J. 246 (1985) (holding that purely economic loss caused by negligence is compensable in tort). This complaint, however, fails to set forth the requisite elements of this claim. The *People Express* Court held that:

> a defendant owes a duty of care to take reasonable measures to avoid the risk of causing economic damages, aside from physical injury, to particular plaintiffs or plaintiffs comprising an identifiable class with respect to whom defendant knows or has reason to know are likely to suffer such damages from its conduct. A defendant failing to adhere to this duty of care may be found liable for such economic damages proximately caused by its breach of duty.

*Id.* at 263.

Plaintiff has failed to set forth any duty owed by Defendants Hard, Grande, and Lowe to him. While Plaintiff contends that it was foreseeable to Defendants that Brewer would try to sell the stolen items "to one or more third parties," this is not a sufficiently ascertainable group of plaintiffs from which to find an "identifiable class" under *People Express*. As the *People Express* court explained, "[a]n identifiable class of plaintiffs must be particularly foreseeable in terms of the type of persons or entities comprising the class, the certainty or predictability of their presence, the approximate numbers of those in the class, as well as the type of economic expectations disrupted." *Id.* at 264. Plaintiff's "one or more third parties" clearly fails to set forth the requisite specificity. *Id.* (finding a class of "members of the general public, or invitees such as sales and service persons at a particular plaintiff's business premises, or persons traveling on a highway near the scene of a negligently-caused accident" insufficiently ascertainable).

    4.    *Replevin (Count Seventeen)*

Plaintiff seeks to replevy "the chattels, a check in the amount of $1,250.00, $1,000 in United States Currency and a chair worth $100.00." Eaton brings this count against Defendants Grande, Lowe, and Hard. Looking at the allegations in the complaint, Plaintiff never pleads that Defendants Grande, Lowe, or Hard ever had possession of these items. Instead, Eaton states that he was told that Brewer had possession of the check, the currency and the chair. (Compl. ¶ 59.) Further, the complaint does not specify whether the "chattels" were ever returned to defendants. As such, since the complaint fails to state that any of the instant moving defendants had possession of these items following the sale to Brewer, the replevin action fails on its face and must be dismissed.

    4.    *Negligence (Count Seventeen)*

Plaintiff brings another negligence count against Defendants Grande, Lowe, and Hard. This fails, as noted above, because the complaint does not properly allege a duty owed by Defendants to Plaintiff. The conclusory allegation of "[defendants] all owed the

Plaintiff a duty of care" is insufficient. (Compl. Count 17, ¶ 2.) As such, this count is dismissed.

     5.     *Tortious Interference with Prospective Economic Interest (Count Nineteen)*
In Count Nineteen, Plaintiff pleads: "In the event that these allegations [regarding Brewer's theft of the items from his family] are not true as to each and every one of the chattles [sic], Grande, Lowe, Hard ... have and continue to tortuously [sic] interfere with the Plaintiff's economic interests." (Compl. Count 19, ¶ 3.) This count also fails to state a claim.

An action for tortious interference with a prospective economic interest protects the right "to pursue one's business, calling, or occupation free from undue influence or molestation.'" *Printing Mart-Morristown v. Sharp Elec. Corp.*, 116 N.J. 739, 750 (1989); *see also MacDougall v. Weichert*, 144 N.J. 380, 403 (1996). Although businesses have the right to compete fairly with one another, that right does not extend to actions taken with the malicious purpose of harming a competitor's business. Thus, "[w]hat is actionable is [t]he luring away, by devious, improper and unrighteous means, of the customer of another." *Id.* (internal quotation omitted).

Plaintiff's claim clearly does not fall within this description. Plaintiff does not allege that Defendants sought to maliciously lure away Eaton's customers. Instead, Plaintiff appears to contend that if Defendants are lying about their nephew having stolen family heirlooms from them, then they are interfering with Eaton's right to sell the items. This is not actionable as a tortious interference claim.

Further, even if Plaintiff's allegations fell within the ambit of tortious interference, Plaintiff's speculative pleading dooms this cause of action. He does not plead facts sufficient to raise a his right to relief above a speculative level, such that it is "plausible on its face." *Twombly*, 550 U.S. at 570. Thus, this count is dismissed.

     6.     *Conspiracy to Commit Tort (Count Ten)*
Finally, Plaintiff alleges a civil conspiracy count against Defendants Grande, Lowe, and Hard. In New Jersey, a civil conspiracy is "combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 177 (2005). Here, Plaintiff presents only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949. Plaintiff concludes that these Defendants "jointly and severally conspired to commit one and/or more tortuous [sic] acts and/or inactions."

13

(Compl. Count Ten ¶ 3.)  There is no factual underpinning to this allegation.  Again, this is plainly insufficient to raise Plaintiff's "right to relief above a speculative level." *Twombly*, 550 U.S. at 555.

Further, "[t]he gist of the claim is not the unlawful agreement, 'but the underlying wrong which, absent the conspiracy, would give a right of action.'" *Morgan v. Union County Bd. of Chosen Freeholders*, 633 A.2d 985, 998 (N.J. Super. Ct. App. Div.1993) (quoting *Bd. of Educ. v. Hoek*, 38 N.J. 213, 238-39 (1962)). As discussed, *supra*, the Court finds that the other counts brought against Defendants Grande, Lowe, and Hard fail to state a claim.  Thus, there is no underlying wrong which, absent the conspiracy, would be actionable.  Accordingly, this count also is dismissed on this basis.

### III.   RULE 11 NOTICE

As demonstrated by the foregoing discussion, the Court worked painstakingly to decipher what was by all accounts a shotgun-style Complaint, contrary to the letter of Rule 8 and the spirit under which the pleading rules were promulgated.  Should Plaintiff decide to file an Amended Complaint, the Court strongly urges him to comply with pleading requirements of the Federal Rules of Civil Procedure. Further, the Court notes, for the benefit of Plaintiff's attorney, that it seriously considered Rule 11 sanctions due to the lack of legal basis for many of the claims asserted, particularly against Defendants Hard, Lowe, and Grande.  The Court declines to begin the sanction process *sua sponte* or otherwise against Plaintiff's lawyer at this time; however, Plaintiff's lawyer is placed on NOTICE that the Court will entertain sanctions should he submit another pleading with claims clearly unwarranted by fact or law.  As such, to the extent that Plaintiff's lawyer chooses to amend, he does so at his own peril if chooses to ignore the admonitions of Rule 11.

### IV.   CONCLUSION

For the foregoing reasons, the motions to dismiss filed by Defendants Town of Newton, John Tomasula, Thomas Tosti, Neil Casey, Susan Grande, Carlton Lowe, and Carol Hard are **GRANTED** and all counts asserted against them are **DISMISSED WITHOUT PREJUDICE**.  Plaintiff is granted leave to refile an amended complaint within 30 days of the accompanying Order.  Plaintiff is also placed on notice that the Court will entertain sanctions based on any future pleading containing claims in violation of Rule 11. An Order follows this Letter Opinion.

                                           /s/ William J. Martini
                                           **WILLIAM J. MARTINI, U.S.D.J.**